UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DAVID DAILY,

                    Petitioner,                         Case No. 2:17-cv-210

v.                                                      Honorable Robert J. Jonker

KATHLEEN OLSON,

                    Respondent.
_____/

## REPORT AND RECOMMENDATION

          This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.

Petitioner David Daily is incarcerated with the Michigan Department of Corrections at the

Newberry Correctional Facility (NCF) in Luce County, Michigan.  Following a two-day jury trial

in the Berrien County Circuit Court, Petitioner was convicted of three counts of second-degree

criminal sexual conduct (CSC-II), in violation of Mich. Comp. Laws § 750.520c.  On June 23,

2014, the court sentenced Petitioner as a second habitual offender, Mich. Comp. Laws § 769.10,[1]

to concurrent prison terms of 7 years, 4 months to 22 years, 6 months on each count.

          On November 17, 2017, Petitioner filed his habeas corpus petition raising four

grounds for relief, as follows:

          I.          Ineffective assistance of counsel

---

[1] Petitioner was charged as a third habitual offender; however, one of the prior offenses occurred after Petitioner had committed the criminal sexual conduct offenses.  Accordingly, it was not properly considered a "prior" offense. Nonetheless, the judgment of sentence reflects a determination of guilt as if the present conviction were Petitioner's third.  (Judgment of Sentence, ECF No. 9-10, PageID.850.)  That appears to be a clerical error.  When the judge imposed Petitioner's minimum sentence, he selected it from the range provided by the grids for a second habitual offender.  (Sentencing Tr., ECF No. 9-8, PageID.735-738.)  Indeed, the trial court imposed the maximum minimum sentence available under the guidelines for a second habitual offender.  (*Id*., PageID.754-755.)

II.     Expert testimony

III.    Sentencing issues

IV.    Ineffective assistance of counsel

(Pet., ECF No. 1, PageID.5-10.)  Respondent has filed an answer to the petition (ECF No. 8) stating that the grounds should be denied because they are unexhausted, non-cognizable, procedurally defaulted and/or meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

Petitioner has filed a motion to compel judgment pursuant to Federal Rule of Civil Procedure 12(c).  As set forth fully below, Petitioner's request is procedurally inappropriate for resolution of a habeas petition.  Accordingly, I recommend that his motion be denied.

## <u>Discussion</u>

## I.    Factual allegations

The Michigan Court of Appeals summarized the facts underlying Petitioner's convictions as follows:

> From 2006 to 2008, the victim's mother lived with defendant in Niles, Michigan. The victim, SV, visited her mother every weekend.  The victim's mother worked weekends, and she left SV with defendant.  SV testified that, almost every weekend when her mother was at work, defendant touched her.  The sexual abuse was unknown until March 2013, when SV's brother found a letter, hidden in a notebook under SV's bed, that SV had written to her school counselor.  At trial, SV testified about three specific instances when defendant rubbed her vagina.  She also testified that defendant committed similar acts on over 100 occasions.

(Mich. Ct. App. Op., ECF No. 9-10, PageID.839.)  "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)."  *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016) (footnote omitted).

The jury heard about two and one-half hours of testimony.  The prosecutor presented the testimony of four witnesses, the victim, the victim's mother, the victim's father, and an expert in forensic interviewing and child development as it relates to sexual abuse, Brooke Rospierski, who conducted the forensic interview of the victim.  Petitioner presented the testimony of his two sons.  The jury heard closing arguments and instructions and then deliberated for less than two hours before returning the guilty verdicts.

Petitioner, with the assistance of his appellate counsel, moved for a new trial claiming that his trial counsel had rendered ineffective assistance.  The trial court conducted a *Ginther* evidentiary hearing[2] regarding the new trial motion.  (Evid. Hr'g Tr., ECF No. 9-9.)  By order entered July 28, 2015, the trial court denied the motion for new trial.  (Berrien Cty. Cir. Ct. Order, ECF No. 9-10, PageID.952-962.)

Petitioner, with the assistance of counsel, appealed the convictions, sentences, and denial of the new trial motion.  Petitioner raised three issues on appeal: the same three issues he raises as habeas issues I-III.  (Pet'r's Appeal Br., ECF No. 9-10, PageID.967-968.)  By unpublished opinion issued March 24, 2016, the Michigan Court of Appeals rejected Petitioner's challenges and affirmed the trial court.  (Mich. Ct. App. Op., ECF No. 9-10, PageID.839-844.)

Petitioner, again with the assistance of counsel, filed an application for leave to appeal in the Michigan Supreme Court.  Petitioner raised the same issues he had raised in the Court of Appeals.  (Pet'r's Appl. for Leave to Appeal, ECF No. 9-11, PageID.1073-1074.)  By order entered September 27, 2016, the Michigan Supreme Court denied leave to appeal.  (Mich. Order, ECF No. 9-11, PageID.1069.)

---

[2] In *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973), the Michigan Supreme Court approved the process of remanding to the trial court for an evidentiary hearing when an appellant has raised claims of ineffective assistance of counsel that require development of a record.

Petitioner did not file a petition for certiorari in the United States Supreme Court. (Pet., ECF No. 1, PageID.3.)  Instead, he timely filed his habeas petition in this Court.  Petitioner supported his petition with the briefs he filed in support of his motion for new trial (ECF No. 1-2, PageID.28-49, 75-102), his sentencing memorandum and supporting exhibits (ECF No. 1-2, PageID.50-125; ECF No. 1-3, PageID.126-128), his appeal brief filed in the Michigan Court of Appeals (ECF No. 1-3, PageID.143-197), his application for leave to appeal filed in the Michigan Supreme Court (ECF No. 1-3, PageID.198-253), and new materials that were not part of the state court record (ECF No. 1, PageID.14-16; ECF No. 1-2, PageID.26-27; ECF No. 2, PageID.255-257; ECF No. 13, PageID.1183-1185; ECF No. 13-1, PageID.1190-1205; Exhibit 20-1, PageID.1305-1316).

## II.     AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652,

655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)

(en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This

presumption of correctness is accorded to findings of state appellate courts, as well as the trial

court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th

Cir. 1989).

### III.    Sentencing issues (habeas issue III)

Petitioner challenges multiple aspects of his sentence.

#### A.  Habitual offender sentence enhancement

First, Petitioner contends that the 2006 conviction that made him a second habitual

offender was not actually prior to the CSC-II offenses.  If Petitioner is correct, it would change his

minimum sentence and his maximum sentence.  Petitioner's complaint regarding the habitual

offender enhancement, however, arises entirely under state law.  (Pet'r's Appeal Br., ECF No. 1-

3, PageID.188) ("Mr. Daily alleges that he was improperly sentenced as a habitual offender.  Mr.

Daily then challenges the tether portion of his sentence on constitutional grounds.").  He argued in

the state appellate courts, and now argues in this Court, that none of the CSC-II offenses would

qualify as a "subsequent felony" under the state statute.  (*Id.*, PageID.188-191.)

The trial court considered the victim's testimony and the testimony of the victim's

mother regarding when the victim and Petitioner lived in the same house.  (Sentencing Tr., ECF

No. 9-8, PageID.737-738.)  Based on that testimony, the trial court found that the CSC-II offenses

occurred after the 2006 conviction.  (*Id.*)  The court of appeals agreed with the trial court:

> We find no clear error in the trial court's decision to find that the offenses at issue
> were subsequent to the October 16, 2006 conviction, and therefore were subject to
> the second-habitual enhancement in MCL 769.10. SV testified that she lived with
> defendant on the weekends from 2006 to 2008.  Although she did not give specific
> dates for when the abuse occurred, and the information filed by the prosecution
> lacked specific information about the three incidents, SV also testified that the
> abuse occurred "almost every weekend" during the time she lived with defendant.
> As recognized by the trial court, "almost every weekend" would surely encompass
> the timeframe occurring after October 16, 2006.  On this record, we decline to find

that the trial court clearly erred in determining that there was evidence to support that defendant committed the CSC II offenses after October 16, 2006.   See *Armstrong*, 490 Mich at 289.

(Mich. Ct. App. Op., ECF No. 9-10, PageID.844.)

Whether the CSC-II convictions are subsequent convictions as contemplated by the Michigan habitual offender enhancement statutes is purely a question of state law.  "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'"  *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases).  The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 68.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76); *see also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same).  Therefore, this Court is bound by the state court of appeals' conclusion

that Petitioner's CSC-II convictions are subsequent convictions under the habitual offender statutes.  This issue, at least as Petitioner has raised it, is not cognizable on habeas review.[3]

### B.  Lifetime electronic monitoring and the Eighth Amendment

Petitioner's sentence included the requirement for registration under the Michigan Sexual Offender Registration Act and lifetime electronic monitoring.  (Sentencing Tr., ECF No. 9-8, PageID.755.)   Petitioner contends that such monitoring constitutes cruel and unusual punishment prohibited by the Eighth Amendment.  The Michigan Court of Appeals concluded that lifetime electronic monitoring for a defendant convicted of CSC-II did not constitute cruel and/or unusual punishment.  (Mich. Ct. App. Op., ECF No. 9-10, PageID.844.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  "[O]nly an extreme disparity between crime and sentence offends the Eighth Amendment." *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000); *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case).  A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'"  *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)).

The Michigan courts rejected Petitioner's Eighth Amendment challenge to lifetime electronic monitoring as a cruel and unusual punishment for CSC-II.  To prevail on his habeas

---

[3] Although Petitioner has not presented a cognizable habeas issue regarding the habitual offender sentencing enhancement, the circumstances he describes implicate Petitioner's Sixth Amendment rights as protected by *Blakely v. Washington*, 542 U.S. 296 (2004), with regard to Petitioner's enhanced maximum sentence, and *Alleyne v. United States*, 570 U.S. 99 (2013), with regard to Petitioner's enhanced guidelines minimum sentence.  Those issues, however, have not been raised in this Court or the state courts.

challenge, Petitioner must demonstrate that the state courts' determination is contrary to, or an unreasonable application of, clearly established federal law.  The Supreme Court has never held that lifetime electronic monitoring is cruel and unusual punishment.

In *Harmelin v. Michigan*, 501 U.S. 957 (1991), the Supreme Court "upheld Michigan's penalty of a mandatory life sentence without the possibility of parole for possession of more than 650 grams of cocaine, even though he defendant had no prior felony convictions." *United States v. Jones*, 569 F.3d 573 (6th Cir. 2009).  In *Smith v. Bauman*, No. 5:10-cv-11052, 2018 WL 1399312 (E.D. Mich. Mar. 19, 2018), the United States District Court for the Eastern District of Michigan extrapolated from *Harmelin* to reach the following conclusion: "[i]f life imprisonment without any possibility of parole for a non-violent offense is not cruel and unusual punishment, lifetime electronic monitoring for the violent crime of criminal sexual conduct is not cruel and unusual punishment."  *Id*. at *5.  The Sixth Circuit Court of Appeals cited *Smith v. Bauman* with approval in concluding that the same argument Petitioner makes here fails to make a substantial showing of the denial of a constitutional right.  *Noonan v. Burton*, No. 17-2458, 2018 WL 6584905, at *3 (6th Cir. Oct. 5, 2018).

It would seem anomalous to hold that it is **not** barbarous to imprison a person for the rest of their lives, as in *Harmelin*, but that it is barbarous to let them out after a term of years subject to electronic monitoring.  Monitoring seems to be a significantly lesser punishment than imprisonment.[4]  In short, Petitioner has failed to show that the state appellate court's determination that lifetime electronic monitoring is not cruel and unusual punishment is contrary to, or an

---

[4] Although not directly applicable, decisions upholding monitoring requirements for sex-offenders against *ex post facto* challenges, *see e.g., Smith v. Doe*, 538 U.S. 84 (2003); *Doe v. Bredesen*, 507 F.3d 998 (6th Cir. 2007), indicate that the courts do not view monitoring as unduly punitive.

unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief on that claim.

### C.  Lifetime electronic monitoring and the Fourth Amendment

Petitioner next argues that lifetime electronic monitoring constitutes an unreasonable search in violation of the Fourth Amendment.  In *Grady v. North Carolina*, 575 U.S. 306 (2015), the United States Supreme Court considered whether North Carolina's satellite based monitoring of convicted sex offenders violated the Fourth Amendment.  The Court determined that such monitoring constituted a search, but did not opine as to the reasonableness of that search, choosing instead to remand to the state courts for that determination.  *Grady*, 575 U.S. at 310.  In *Belleau v. Wall*, 811 F.3d 929 (7th Cir. 2016), the Seventh Circuit Court of Appeals read *Grady* as permitting "electronic monitoring of sex offenders . . . if reasonable."  *Id*. at 932.

The Michigan Court of Appeals concluded that lifetime electronic monitoring in Petitioner's case was reasonable.  (Mich. Ct. App. Op., ECF No. 9-10, PageID.844.)  The appellate court relied on the reasoning in *People v. Hallak*, 873 N.W.2d 811, 824-26 (Mich. Ct. App. 2015) *rev'd, in part, on other grounds*, 876 N.W.2d 523 (Mich. 2016).  In *Hallak*, the Michigan Court of Appeals applied clearly established federal law to conclude that "[t]hough it may certainly be that [lifetime electronic] monitoring of a law abiding citizen would be unreasonable, on balance the strong public interest in the benefit of monitoring those convicted of CSC-II against a child under the age of 13 outweighs any minimal impact on defendant's reduced privacy interest."  *Id*. at 826.

Petitioner fails to show that the court of appeals' determination regarding the reasonableness of lifetime electronic monitoring is contrary to, or an unreasonable application of, clearly established federal law.  Indeed, he cannot make such a showing.  As the United States District Court for the Eastern District of Michigan has recognized, "[t]he United States Supreme Court has yet to hold that lifetime monitoring of convicted sex offenders amounts to an

unreasonable search and seizure in violation of the Fourth Amendment." *Atkinson v. Mich. Dep't of Corr.*, No. 16-cv-10564, 2016 WL 6696044, at *8 (E.D. Mich. Nov. 15, 2016).  Accordingly, Petitioner is not entitled to habeas relief on his Fourth Amendment claim.

## IV.    Expert testimony (habeas issue II)

Petitioner contends that it was error to admit the expert testimony of Brooke Rospierski.  Ms. Rospierski testified that she was a social worker and that she worked as a forensic interview specialist at the Children's Assessment Center in Berrien County.  (Trial Tr. II, ECF No. 9-6, PageID.648-649.)  She had performed thousands of forensic interviews.  (*Id.*)  Ms. Rospierski was permitted to offer expert opinion testimony in the area of forensic interviewing and childhood development as it pertains to sexual abuse.  (*Id.*, PageID.652.)  She testified that children often delay in disclosing sexual abuse.  (*Id.*, PageID.653.)  She testified that abuse that occurs over long periods of time might blur together in the mind of a child.  (*Id.*, PageID.654.)  She testified that children may disclose abuse incrementally rather than all at once.  (*Id.*, PageID.655.)  Ms. Rospierski described the forensic interviewing process.  (*Id.*, PageID.656-657.)  Ms. Rospierski then testified that Petitioner's victim made a disclosure during the forensic interview and that the nature of the disclosure was consistent with that provided by children who have been sexually abused.  (*Id.*, PageID.657-658.)

Petitioner did not object to the testimony at trial.  On appeal, Petitioner objected that the testimony was not admissible based on the authority of *People v. Beckley*, 456 N.W.2d 391 (Mich. 1990), and *People v. Peterson*, 537 N.W.2d 857 (Mich. 1995).  (Pet'r's Appeal Br., ECF No. 9-10, PageID.1007-1009.)  Those authorities, in turn, interpret Michigan Rules of Evidence 702, 704, and 403.  Petitioner's argument, therefore, relates only to state law, not federal constitutional law.

11

The Michigan Court of Appeals, applying state law, rejected Petitioner's challenge to the expert's testimony:

> Defendant argues that Brooke Rospierski, who was qualified as an expert in child sexual abuse, gave an opinion on the credibility of SV when she testified that SV made a disclosure and that the circumstances of SV's disclosure were consistent with disclosures of child sexual abuse victims. . . . Rospierski testified that children often delay disclosing sexual abuse for months or years.  She testified that disclosure is often a long process, and that children tell more of the story as time passes.  Rospierski testified that she interviewed SV, and that SV made a "disclosure" to her.  In Rospierski's opinion, the circumstances of the disclosure were consistent with disclosures of sexual abuse victims.
>
> In *People v Peterson*, 450 Mich 349; 537 NW2d 857 (1995), our Supreme Court addressed the proper scope of expert testimony in child sexual abuse cases.  An expert may not testify that the sexual abuse occurred, may not vouch for the veracity of the victim, and may not testify whether the defendant is guilty.  *Id*. at 352, 369.  An expert may testify regarding typical symptoms of child sexual abuse for the purpose of explaining the victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an abuse victim or to rebut an attack on the victim's credibility.  *Id*. at 373.  In addition, if a defendant raises the issue of the victim's postincident behavior or attacks the victim's credibility, an expert may testify that the victim's behavior is consistent with that of a sexual abuse victim.  *Id*. at 373-374.
>
> Rospierski's testimony that SV made a disclosure was not plainly erroneous.  See *Benton*, 294 Mich App at 202.  This testimony revealed a fact—that SV told Rospierski that defendant had sexually abused her—and does not indicate whether Rospierski believed SV and found her claim of sexual abuse credible.  The testimony was not prohibited by *Peterson*.
>
> Rospierski's testimony that the circumstances of SV's disclosure were consistent with disclosures of sexual abuse victims was also not plain error.  Defendant attacked SV's credibility.  He elicited testimony from SV that defendant touched her almost every weekend and yet she did not tell anyone.  By eliciting this testimony, which highlighted the length of time between the sexual abuse and SV's disclosure, defendant suggested that SV was not credible because of her delayed disclosure.  See *Peterson*, 450 Mich at 374 n 13.  Because defendant attacked SV's credibility, Rospierski was allowed to testify that the circumstances of SV's disclosure were consistent with disclosures of sexual abuse victims.  *Id*. at 373-374.

(Mich. Ct. App. Op., ECF No. 9-10, PageID.839-840.)  The appellate court's determination that the evidence was properly admitted under *Peterson*—and, therefore, under Michigan Rules of Evidence 702, 704, and 403—is binding on this Court.  *Stumpf,* 722 F.3d at 746 n.6 (quoting

12

*Bradshaw,* 546 U.S. at 76 ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'")). Thus, it is conclusively established that the expert testimony was properly admitted under state law.

Even if this Court might have decided the evidentiary issue differently, under the AEDPA, the Court may not grant relief.  The court may only grant relief if a petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts.  *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).  Petitioner has not met this difficult standard.  Indeed, he provides only the argument he made to the court of appeals—that the admission of the expert testimony was inconsistent with *Peterson*.  On habeas review, this Court has no authority to question the appellate court's decision to the contrary.

Petitioner's argument hints that the testimony may have been objectionable because it embraced an ultimate issue reserved for the jury.  (Pet'r's Appeal Br., ECF No. 9-10, PageID.1009) ("Ms. Rospierski was improperly vouching for the veracity of the victim and improperly testified that the sexual abuse occurred.").  Even if Ms. Rospierski's testimony might be deemed an invasion of the province of the jury, Petitioner has not cited any Supreme Court cases declaring that the introduction of such testimony rises to the level of a due process violation. Interpreting the Federal Rules of Evidence, the Supreme Court in *United States v. Johnson*, 319 U.S. 503 (1943), considered the admissibility of expert testimony that was challenged because it "invaded the jury's province."  *Id.* at 519.  The court was not troubled by the fact that the expert testified regarding ultimate issues:

> No issue was withdrawn from the jury.  The correctness or credibility of no materials underlying the expert's answers was even remotely foreclosed by the expert's testimony or withdrawn from proper independent determination by the jury.  The judge's charge was so clear and correct that no objection was made, though, of course, there were exceptions to the refusal to grant the usual requests for charges that were either redundant or unduly particularized items of testimony. The worth of our jury system is constantly and properly extolled, but an argument such as that which we are rejecting tacitly assumes that juries are too stupid to see the drift of evidence.  The jury in this case could not possibly have been misled into the notion that they must accept the calculations of the government expert any more than that they were bound by the calculations made by the defense's expert based on the defendants' assumptions of the case.  So long as proper guidance by a trial court leaves the jury free to exercise its untrammeled judgment upon the worth and weight of testimony, and nothing is done to impair its freedom to bring in its verdict and not someone else's, we ought not be too finicky or fearful in allowing some discretion to trial judges in the conduct of a trial and in the appropriate submission of evidence within the general framework of familiar exclusionary rules.

*Johnson*, 319 U.S. at 519-20.  Federal Rule of Evidence 704 (a) expressly states that "[a]n opinion is not objectionable just because it embraces an ultimate issue."  *Id.*  The parallel Michigan Rule of Evidence is virtually identical.  Mich. R. Evid. 704.  Federal Rule of Evidence 704 was passed for the express purpose of abolishing case law that opined witnesses could not express opinions on ultimate issues.  Advisory Committee Notes, Fed. R. Evid. 704.  In *United States v. Scheffer*, 523 U.S. 303 (1998), in a concurring opinion, Justice Kennedy quoted the Advisory Committee Notes to explain the change:

> The older cases often contained strictures against allowing witnesses to express opinions upon ultimate issues, as a particular aspect of the rule against opinions. The rule was unduly restrictive, difficult of application, and generally served only to deprive the trier of fact of useful information.  7 Wigmore §§ 1920, 1921; McCormick § 12.  The basis usually assigned for the rule, to prevent the witness from "usurping the province of the jury," is aptly characterized as "empty rhetoric." 7 Wigmore § 1920, p. 17.

*Scheffer*, 523 U.S. at 319.  Therefore, Petitioner has failed to show that state appellate court's approval of the introduction of Ms. Rospierski's testimony, even if it embraced an ultimate issue reserved for the jury, is contrary to, or an unreasonable application of, clearly established federal law.  Therefore, he is not entitled to habeas relief on this claim.

**V.      Ineffective assistance of counsel (habeas issues I and IV)**

In Petitioner's direct appeal, he complained of three specific instances of ineffective assistance of counsel:  (A) counsel failed to adequately investigate and, therefore, failed to present an adequate defense challenging the victim's testimony; (B) counsel failed to object to countless hearsay statements, frequent leading questioning of minor witnesses, and the admission of expert testimony; and (C) counsel failed to properly advise his client as to the ramifications of not accepting the offered plea.  In his petition, Petitioner raises each of these ineffective assistance claims anew, but he also adds a new claim: counsel failed to investigate, call witnesses, and present facts to show that Petitioner, in fact, never "babysat" the victim.  With regard to this new claim, Petitioner claims that his trial counsel and his appellate counsel rendered ineffective assistance.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466

U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

## A.  Failure to investigate

Petitioner claims that counsel failed to investigate the prospect that the victim's mother and the victim manufactured the allegations of criminal sexual conduct to "get even" with Petitioner for problems between Petitioner and the victim's mother.  Petitioner claims there was evidence available that supported that claim.  At the *Ginther* hearing, Petitioner's work colleague, and friend testified that, about two years before Petitioner's trial, she overheard the victim's brother tell her child that the victim's mother had "found a way to get back at [Petitioner]." (Ginther Hr'g Tr., ECF No. 9-9, PageID.765.)  Petitioner's sister testified that the victim's mother had become hostile to her in their common workplace during the summer of 2007.  (*Id.*, PageID.809-810.)  Petitioner testified that he cheated on the victim's mother and that she tried to get him arrested.  (*Id.*, PageID.816.)  Petitioner's father testified that when he moved Petitioner out of the house he shared with the victim's mother, the victim's mother used vindictive and

horrific language.  (*Id.*, PageID.831.)  He remembered her saying "I will get even with you."  (*Id.*, PageID.834.)

Petitioner contends counsel was ineffective because he failed to investigate and develop a defense that the criminal sexual conduct accusations were nothing more than a revenge plot by the victim's mother for Petitioner's infidelity.  The trial court reviewed the efforts Petitioner's counsel made to investigate the case and prepare Petitioner's defense.  (Berrien Cty. Cir. Ct. Order, ECF No. 9-10, PageID.954-957.)   The court addressed Petitioner's claim of a revenge plot as follows:

> Defendant testified, []he and Ms. Otte broke up in 2008 as a result of, among other issues, Defendant cheating on her.  The sexual abuse in this case was alleged to have occurred during the period January 2005 through December 2008.  It was not reported to the authorities until March, 2013, when the victim's brother, age 6 or 7 at the time, found [the victim's] unsent letter to her school counselor in her bedroom (EH Tr, 17-18).  In it, the victim . . . states "also he touched me in places."  [The victim's mother] did not live her [the victim's father] at that house.  It strains credulity that Ms. Otte would wait approximately five (5) years from the time of the breakup to somehow conspire with the victim to compose a somewhat vague letter accusing Defendant of inappropriate touching; hide it under the bed; and then hope that her little brother finds it and provides it to her parents.  Further, to advance such a theory, the defense would have had to supply a sufficient motive for Ms. Otte to fabricate such allegations, i.e., that Defendant had cheated on her; thus calling into question Defendant's character for honesty in front of the jury.

(*Id.*, PageID.956.)  Moreover, even if counsel did not interview the witnesses, he was apparently aware of their testimony because he made clear to Petitioner that the witnesses "wouldn't work into what he was . . . trying to do."  (*Id.*)  The trial court determined that Petitioner's counsel adequately investigated the case prior to trial and developed a sound trial strategy and called the witnesses necessary to support that strategy.  (*Id.*, PageID.957.)  The court of appeals agreed.  The appellate court reported that the trial court's conclusion that the revenge conspiracy was incredible found support in the record.  (Mich. Ct. App. Op., ECF No. 9-10, PageID.841.)  Moreover, because

the conspiracy theory was incredible, the decision to not interview or call witnesses to support it was sound trial strategy.  (*Id.*)

Petitioner plainly disagrees with the analysis of the Michigan courts; however, he has failed to show how the courts' determinations of fact are unreasonable on the record or that the courts' conclusions regarding counsel's effectiveness are contrary to, or an unreasonable application of, *Strickland*.  Accordingly, his ineffective assistance claim relating to counsel's failure to pursue Petitioner's revenge conspiracy theory is without merit.

**B.  Failure to object to hearsay and adequately cross-examine witnesses**

Petitioner next challenges his trial counsel's failure to object to hearsay testimony elicited by the prosecutor from the victim's father.  Petitioner also contends that counsel's efforts fell short with regard to the cross-examination of the victim's father, the cross-examination of the victim, the cross-examination of the expert, and the failure to object to the expert's testimony.

**1.    Hearsay testimony**

The victim's father testified as follows:

Prosecutor:    When did you discover that this had happened regarding the defendant and [your daughter]?

Witness:    I'd been given the letter and she came home and I asked her if it was true, and—

Prosecutor:    Okay.

Witness:    --she said yes.

Prosecutor:    So you found out through this letter?

Witness:    Yes.

Prosecutor:    And who brought you the letter?

Witness:    My son originally found it.

Prosecutor:    All right.  And was this in 2013?

| | |
|---|---|
| Witness: | Yes. I believe it was around March, I believe. |
| Prosecutor: | All right.  Around then when you found it--or |
| Witness: | Yeah. |
| Prosecutor: | --found out about it? |
| Witness: | Yeah. |
| Prosecutor: | All right. |
| Witness: | I believe so. |
| Prosecutor: | Did you go into any detail with [your daughter] about the letter? |
| Witness: | No. |
| Prosecutor: | All right.  And when you received the letter and confirmed with [your daughter], did—what was your next step? |
| Witness: | I immediately called the police. |
| Prosecutor: | Okay.  Did you have any more information about what happened than what was in the letter? |
| Witness: | No. |

(Trial Tr. I, ECF No. 9-6, PageID.645-646.)  Petitioner complains that counsel did not object on grounds of hearsay to the victim's father's statement that the victim said "yes" when he asked her if the statements in the letter about "touching" were true.

The Michigan Court of Appeals did not even consider whether the statement was hearsay:

> Even if SV's statement was hearsay and counsel's failure to object could be viewed as objectively unreasonable, defendant cannot establish that, but for the failure to object, the result of the proceedings would have been different.  SV testified that defendant abused her nearly every weekend she saw him for a period of two years, and she specifically recalled three instances of abuse.  SV's letter was not admitted into evidence, and there was no testimony regarding the specifics of the letter. Because the contents of the letter were unknown, we fail to see how the out-of-court statement could have affected the jury's determination of SV's credibility. Defendant himself fails to offer an explanation regarding how SV's out-of-court statement affected the outcome at trial.

19

(Mich. Ct. App. Op., ECF No. 9-10, PageID.842.)

The Michigan Court of Appeal's analysis is entirely consistent with clearly established federal law.  "When deciding ineffective-assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  *Strickland*, 466 U.S. at 697. That is the course the Michigan appellate court followed here.  Moreover, the court of appeals' determination that no prejudice followed from the admission of the father's statement that the daughter said the contents of the letter were true is unassailable.  The jury had already heard the victim's testimony.  The jurors were well-aware that the victim believed as true her reports that Petitioner had touched her inappropriately.  This was not a statement contemporaneous with the abuse that might bolster the existence of a claim that was not disclosed until much later.  This is the accusation that resulted in the prosecution.

Petitioner has failed to demonstrate that the appellate court's determination that he suffered no prejudice is contrary to, or an unreasonable application of clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief on his claim that counsel failed to object to hearsay.

### 2.    Cross-examination

Petitioner faults counsel's cross-examination of every prosecution witness.  With regard to the victim's parents, Petitioner complains that counsel did not ask how the victim was doing in school and whether she had any behavior issues.  (Pet'r's Appeal Br., ECF No. 9-10, PageID.999.)  Petitioner offers nothing to the Court, and offered nothing in the state appellate courts, to suggest that such inquiries would have borne fruit.  For that reason, the Michigan Court

of Appeals concluded that "Defendant has failed to overcome the strong presumption that defense counsel's cross-examination of [the victim's] father was sound trial strategy." (Mich. Ct. App. Op., ECF No. 9-10, PageID.842.)

As noted above, a court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* The court of appeals did nothing more here than hold Petitioner to his burden. He provides nothing but speculation that his proposed cross-examination would have yielded anything of value to his defense.[5] "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt*, 571 U.S. at 23 (quoting *Strickland*, 466 U.S. at 689).

Petitioner's objection to counsel's efforts to cross-examine—or, more accurately, failure to cross-examine—the expert witness suffer the same defect.[6] Petitioner does not offer anything that the expert might have said that would have benefitted his case. Moreover, at the

---

[5] Petitioner's parallel complaint that counsel should have obtained the victim's school records also fails. The Michigan Court of Appeals concluded that such records might be subject to *in camera* review, and even disclosure, if Petitioner demonstrated "a good faith belief, grounded in some demonstrable fact, that the records are likely to contain information necessary to the defense." (Mich. Ct. App. Op., ECF No. 9-10, PageID.843.) On the other hand, such documents may not be reviewed for a defendant on a "fishing expedition." (*Id*.) Petitioner gave the Michigan appellate court, and gives this Court, no basis to conclude that the effort to obtain such documents was anything but a fishing expedition; therefore, counsel cannot be faulted for not pursuing production of those documents.

[6] Petitioner also challenges counsel's failure to object to the expert's testimony for the reasons identified in § IV, *infra*. As stated above, however, the expert's testimony was not objectionable. The Sixth Circuit has held that "'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). *See also Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010); *Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010). "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

*Ginther* hearing, counsel explained why he chose not to cross-examine the expert.  He did not want the jury to dwell on the expert's testimony.  (*Ginther* Hr'g Tr., ECF No. 9-9, PageID.800.)

Review of counsel's closing argument reveals his strategy.  Counsel argued that the victim described dozens and dozens of instances of abuse, abuse that required her to remove her pants and took as much as twenty minutes.  (Trial Tr. II, ECF No. 9-7, PageID.699-705.)  Yet, the abuse purportedly occurred in the living room of a house where as many as three other boys may have been present, perhaps even in the same room.  (*Id.*)  The expert spoke only to the delay in the disclosure.  Petitioner's counsel wanted to focus on the improbable nature of the facts disclosed, not when they were disclosed, or the reasons for the delay.

The Michigan Court of Appeals determined that counsel offered a strategic reason for his choice to forego cross-examination of the expert witness.  (Mich. Ct. App. Op., ECF No. 9-10, PageID.842.)  The appellate court concluded further that Petitioner had offered no basis to overcome the presumption that counsel's decision was sound trial strategy.  (*Id.*)  Petitioner has likewise offered this Court no basis to overcome the presumption, or the double deference owed to the appellate court's determination.

Petitioner also questions counsel's cross-examination of the victim.  With regard to the victim's testimony, however, Petitioner's challenge centers on counsel's failure to object to the prosecutor's questioning of the victim.  At the preliminary examination, the victim testified that, when the abuse occurred, she would be wearing normal clothes, like blue jeans.  (Prelim. Exam. Tr., ECF No. 9-3, PageID.376.)  She testified that Petitioner would have her remove her pants. (*Id.*)  When the prosecutor sought clarification, suggesting that her pants might have, sometimes, not come off, but just been unzipped, Petitioner's counsel objected to the leading question.  (*Id.*,

PageID.377-378.)  The prosecutor rephrased the question to a more general question: "Was there ever a time when your pants were different?"  (*Id*., PageID.378.)  The victim responded "no."  (*Id*.)

At trial, Petitioner's counsel referred the victim back to her preliminary examination testimony.  (Trial Tr. I, ECF No. 9-6, PageID.628.)  He asked if she remembered testifying that every time the abuse occurred, Petitioner would have her remove her pants and lay them on the floor; she agreed that was the case.  (*Id*.)  The prosecutor complained that counsel mischaracterized the preliminary examination testimony.  (*Id*.)  The court agreed that Petitioner's counsel's exploration of the topic was not appropriate cross-examination and that, if he wanted to question the victim regarding prior testimony, counsel should provide her the prior testimony.  (*Id*.)  Counsel never did show the victim her prior testimony, he just reviewed her prior testimony with her and, again, elicited her agreement that she said Petitioner had made her take her pants off.

On redirect, the prosecutor showed the victim her prior testimony.  (*Id*., PageID.633-634.)  The victim agreed that she did not previously testify that he always made her remove her pants; and, in fact, it only occurred sometimes.  (*Id*.)

On re-cross, Petitioner's counsel again directed the victim to her preliminary examination testimony.  Counsel tried to get the victim to acknowledge that saying "there was never a time when her pants were different" was the same as saying "her pants were always off." (*Id*., PageID.636-637.)  The court sustained the prosecutor's objection to that question because, according to the court, the question mischaracterized the victim's prior testimony.  (*Id*., PageID.637.)  The victim then testified that it was not the case that her pants were always off.  (*Id*.)

Based on the testimony available from the preliminary examination, the Michigan Court of Appeals concluded that counsel had achieved everything he could.  The court stated: "[D]efense counsel got SV to admit that she had testified that defendant would make her take her

pants off and that there was never a time that her pants were "different[.]"  (Mich. Ct. App. Op., ECF No. 9-10, PageID.842.)  Further, the court recognized that the admission Petitioner's counsel secured was "inconsistent with her trial testimony."  (*Id*.)

Petitioner does not explain what objection his counsel could have made to the prosecutor's questioning, nor does he explain what more his counsel could have accomplished given the vague testimony from the preliminary examination.  Because it appears that counsel squeezed every possible benefit out of  the inconsistency between the preliminary examination testimony and the trial testimony—and the court precluded him from pushing the issue any further—Petitioner has failed to show that his counsel's actions were professionally unreasonable or that he suffered any prejudice as a result of those actions.  At a minimum, Petitioner has failed to show that the court of appeals rejection of his claim regarding counsel's cross-examination of the victim is contrary to, or an unreasonable application of, *Strickland*.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

### 3.    Plea offer

Petitioner next complains that counsel failed to adequately explain a plea offer. Petitioner claims that the prosecution offered an opportunity to plead guilty to a fourth-degree criminal sexual conduct charge.  Petitioner claims that if counsel had only explained that the CSC-II charges that he faced would result in lifetime electronic monitoring, he would have taken the plea deal.

At the *Ginther* hearing, counsel testified that he "conveyed the offer and also conveyed what the possible penalties [were] for the [CSC-IV] offense compared to what the possible penalties were if he's convicted at a trial."  (*Ginther* Hr'g Tr., ECF No. 9-9, PageID.798.) Counsel said that he told Petitioner that, whether Petitioner was convicted of CSC-IV or CSC-II, he would be required to register as a sex-offender.  (*Id*.)  According to counsel, Petitioner balked

at the offer because he did not want a conviction that labeled him as a sex offender. (*Id.*) Counsel went back to the prosecutor to see if he could negotiate a charge that would not require sex offender registration. (*Id.*, PageID.799.) The prosecutor refused. (*Id.*) Counsel acknowledged, however, that he never specifically advised Petitioner that a CSC-II conviction would include lifetime electronic monitoring. (*Id.*)

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

The Michigan Court of Appeals rejected Petitioner's ineffective assistance claim relating to plea negotiations:

> The trial court found that defendant would not have accepted a plea offer unless the offer did not require him to register as a sex offender. This finding was not clearly erroneous. *LeBlanc*, 465 Mich at 579. Defense counsel testified that he explained to defendant that he would have to register as a sex offender if he pleaded guilty to CSC IV and that defendant was adamant that he would not accept any plea offer that required him to register as a sex offender. The prosecutor did not present any plea offer that did not require defendant to register as a sex offender. Under these circumstances, defendant cannot show that, but for the ineffective advice, he would have accepted the offer to plead guilty to CSC IV. See *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014). Accordingly, there was no prejudice.

(Mich. Ct. App. Op., ECF No. 9-10, PageID.843.)

The appellate court's analysis follows the federal law clearly established by *Hill v. Lockhart*. The court analyzed whether Petitioner had shown that he would have pleaded guilty if

counsel had only informed him that CSC-II convictions would require lifetime electronic monitoring.  But, the trial court found that Petitioner would not have accepted a plea offer unless the offer did not require him to register as a sex offender.  That finding of fact dooms Petitioner's claim.  The finding is presumed correct.  Petitioner has not presented clear and convincing evidence to overcome that presumption.  Petitioner does not even challenge that finding; his argument acknowledges the finding and then just ignores it.  (Pet'r's Appeal Brief, ECF No. 9-10, PageID.1005; Pet'r's Appl. for Leave to Appeal, ECF No. 9-11, PageID.1112.)  Moreover, the finding is well-supported by the record, specifically, the testimony of Petitioner's counsel at the *Ginther* hearing.

Petitioner has failed to show that the court of appeals' rejection of his ineffective assistance claim relating to the plea offer is contrary to, or an unreasonable application of, clearly established federal law, or that the factual determinations upon which the rejection rests are unreasonable on the record.  Accordingly, he is not entitled to habeas relief on this claim.

## VI.    New claim of ineffective assistance of trial and appellate counsel

In addition to the claims Petitioner raised previously in the Michigan appellate courts, he has added a new claim: that both his trial and appellate counsel were ineffective for failing to argue that Petitioner was never at the victim's mother's home when the victim's mother was not there and the victim was there.  Before the Court may grant habeas relief, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim.  *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275-77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his

26

federal claims to all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts.  *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen v. Perini*, 424 F.2d 134, 138-39 (6th Cir. 1970).

Petitioner bears the burden of showing exhaustion.  *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  Petitioner has not raised this claim in any state court.  Indeed, the very premise of his claim of ineffective assistance is that counsel failed to raise this claim in the state courts.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented.  28 U.S.C. § 2254(c). Petitioner has at least one available procedure by which to raise the issues he has presented in this application.  He may file a motion for relief from judgment under Mich. Ct. R. 6.500 *et seq.*  Under Michigan law, one such motion may be filed after August 1, 1995.  Mich. Ct. R. 6.502(G)(1). Petitioner has not yet filed his one allotted motion.  Therefore, the Court concludes that he has at least one available state remedy.  To properly exhaust his claim, Petitioner would have to file a motion for relief from judgment in the Berrien County Circuit Court.  If his motion was denied by the circuit court, Petitioner would have to appeal that decision to the Michigan Court of Appeals and the Michigan Supreme Court.  *O'Sullivan,* 526 U.S. at 845; *Hafley,* 902 F.2d at 483 ("'[P]etitioner cannot be deemed to have exhausted his state court remedies as required by 28 U.S.C. § 2254(b) and (c) as to any issue, unless he has presented that issue both to the Michigan Court of Appeals and to the Michigan Supreme Court.'") (citation omitted).

Although the Court may not grant relief on a habeas claim that is unexhausted, the Court may deny relief on such a claim.  28 U.S.C. 2254(b)(2).  Petitioner's unexhausted claim is so lacking in merit that dismissal, even absent exhaustion, is appropriate.

There is limited record evidence to support Petitioner's new claim.  It is founded upon Petitioner's *Ginther* hearing testimony that there was never a time that he was in the house with the victim when the victim's mother was not there.  (*Ginther* Hr'g Tr., ECF No. 9-9, PageID.824-825.)  Petitioner's testimony is then bolstered by affidavits from his father, mother, and sister that state the victim was left in her maternal grandmother's care every time the victim's mother left the home and that the victim was never left in the care of Petitioner.  (Affidavits, ECF No. 19, PageID.1244-1246.)

The affidavits purport to be made on personal knowledge but, immediately before the signature, indicate that they are true based on knowledge and belief and then, in the acknowledgement, indicate they are true "to the best of [the affiant's] information, knowledge, and belief."  (*Id*.)  Moreover, the testimony of Petitioner's father at the *Ginther* hearing disclosed that he and his wife only visited Petitioner and the victim's mother at their home a couple of times a month.  (*Ginther* Hr'g Tr., ECF No. 9-9, PageID.829-830.)  That would hardly leave them in a position to personally know who was in the house when the victim was present.  Indeed, there is nothing in the record to suggest that Petitioner's parents or his sister would have personal knowledge of who was in the house at any given time.  Petitioner also presents maps and mileage computations in a convoluted attempt to show that it would have made more sense for the victim's mother to leave the victim with the victim's grandmother than with Petitioner.  (ECF No. 19, PageID.1230-1242.)

Contradicting the testimony of Petitioner, his sister, and his parents, is the testimony of persons who actually lived in the house: the victim, Petitioner's sons, and the victim's mother. Although Petitioner's counsel might have been able to overcome the contradictory testimony of the victim and her mother, it is difficult to fathom how counsel could have convinced the jurors to disregard the testimony of Petitioner's own children.

The question before this Court on *de novo* review of an unexhausted ineffective assistance of counsel claim is whether "counsel's representation fell below an objective standard of reasonableness" given the "strong presumption that counsel's conduct falls within the wide range of reasonable profession assistance." *Strickland*, 466 U.S. at 688, 689. Whatever the actual reasons for counsel's choice may be, *see Harrington*, 562 U.S. at 110 (*Strickland* . . . calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind."), counsel's decision to forego the argument urged by Petitioner now—that Petitioner was never in the home with the victim unless the victim's mother was present—was eminently reasonable. The defense was not well-supported by the affidavit testimony offered by Petitioner's family members and Petitioner would have been compelled to testify to support the defense. Moreover, if counsel had pursued that defense, he would have been confronted with contrary testimony from every other person in the household.

Petitioner's affidavits and maps do not suffice to overcome the presumption that counsel's decision to forego this argument was sound trial strategy. Accordingly, Petitioner has failed to establish that his trial counsel rendered ineffective assistance or that his appellate counsel failed him when she failed to raise trial counsel's ineffective assistance. Once again, Petitioner is not entitled to habeas relief.

## VII.    Judgment on the pleadings

Petitioner has moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  That rule provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Rule 12 further provides that if matters outside the pleadings are presented, the motion should be treated as one for summary judgment under Rule 56.  Fed. R. Civ. P. 12(d).  The standards for resolving a motion under Rule 12(c) or Rule 56 include construing the factual allegations or evidence in a light most favorable to the non-moving party.  *Arsan v. Keller*, 784 F. App'x 900, 909 (6th Cir. 2019) (motion under Rule 12(c)); *Williams v. City of Cleveland*, 907 F.3d 924, 932 (6th Cir. 2018) (motion under Rule 56)).

"The obvious purpose of Rule 12(c) is to save time and expense in cases wherein the ultimate facts are not in dispute."  *Ulen Contracting Corp. v. Tri-County Elec. Co-op.*, 1 F.R.D. 284 (W.D. Mich. 1940).  Summary judgment under Rule 56 "is provided to dispose of cases where pure issues of law are clearly presented for decision obviating the necessity for a trial on the merits[; i]t is intended to economize the court's time, and its purpose is totally frustrated if determination of the motion would require as much time as a full trial on the merits."  *Elliot v. Elliot*, 49 F.R.D. 283, 284 (S.D.N.Y. 1940).

Rule 12 of the Rules Governing § 2254 Cases provides that the Federal Rules of Civil Procedure may be applied to § 2254 proceedings "to the extent that they are not inconsistent with any statutory provisions of these rules . . . ."  Rule 12, Rules Governing § 2254 Cases.  The difficulty in applying Rules 12(c) and 56 of the Federal Rules of Civil Procedure to § 2254 cases is that there is no trial to be avoided.  By seeking relief under either rule, Petitioner gains nothing. He is entitled to no more relief than he would obtain if the Court decided the petition in the normal course; but, he puts himself in a less advantageous position because he compels the Court to

30

construe the factual allegations or evidence in a light most favorable to the Respondent.  Because no purpose is served by Petitioner's motion, it should be denied.

## **Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial

of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.  I also recommend that Petitioner's motion for judgment on the pleadings (ECF No. 23) be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.


Dated:    June 5, 2020                                      /s/ *Maarten Vermaat*
                                                             Maarten Vermaat
                                                             United States Magistrate Judge


## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).